[No. 19283.　Department Two.　July 17, 1925.]

## HETTIE J. GAMBLE, *Respondent,* v. ANGUS McLEOD *et al., Appellants.*[1]

BOUNDARIES (14)—RELOCATION—AGREEMENT BETWEEN PARTIES—VALIDITY OF ORAL CONTRACT. A plan among the owners of the lots in a block to shift all the lot lines two feet east, by a written agreement in the nature of a quitclaim deed to and from one another, is not binding upon a lot owner who refused to sign or consent to the readjustment except on proof of satisfactory title shown by abstract, with which the others refused to comply.

SAME (15)—AGREEMENT AS TO LOCATION—ESTOPPEL. Such an owner is not estopped to object to trespasses on two feet of her land by the adjoining owner, during negotiations for the treaty readjusting the lot lines, where she had protested against such trespass and consented to nothing other than the plan for readjustment, which was never completed.

MACKINTOSH, J., dissents.

Appeal from a judgment of the superior court for Pierce county, Card, J., entered October 25, 1924, in favor of the plaintiff, in an action for an injunction and for damages, tried to the court. Affirmed.

*J. H. Gordon* and *A. O. Burmeister,* for appellants.

*J. Chas. Dennis,* for respondent.

[1]Reported in 237 Pac. 704.

MITCHELL, J.—This action relates primarily to the boundary line between the properties of adjoining landowners. The properties are in block 8, "Winter-. mute's Part of Tacoma, Pierce County, W. T." The block is bounded on the north by North 26th street, on the west by Alder street, and on the east by Cedar street. The north half of the block consists of twelve lots, each fronting twenty-five feet on North 26th street, the lots being numbered from one, situated in the northwest corner of the block, to twelve, situated in the northeast corner of the block. The defendants own lots 5 and 6. The plaintiff owns lots 7 and 8. The city constructed sidewalks, one on the east side of Alder street and another on the west side of Cedar street, so located that, if the lots were measured off from the sidewalks, the line between the properties of the parties to this action would be two feet east of where it is by a survey with reference to permanent monuments set in the center of the street intersections of the platted addition, it being admitted in this case that the latter plan of survey controls. The plaintiff purchased her property first. The property of both parties was unimproved. The defendants commenced to build a residence on their lots. The plaintiff then had a survey made of her property from the monuments in the street intersections. Stakes were set on the lines of her lots, according to such survey. There is no dispute as to the correctness of this survey.

The defendants in making their improvement, relying on measurements from the sidewalks, constructed a concrete walkway on the east side of their building so that two feet of it was on plaintiff's lot 7. About the same time, they commenced construction of a fence on the east side of the concrete walkway. The plaintiff, upon observing this, objected to the trespass and

13—135 WASH.

called attention to the stakes showing the true line. Upon this protest of the plaintiff, all the owners of the whole tier of lots became interested. A plan was proposed by which all of the parties should enter into a written contract in the nature of a quitclaim deed, each to another as necessary, defining the lines of the several twelve lots according to measurements from the sidewalks. This plan was feasible, as there was full three hundred feet frontage of private property on 26th street north in addition to a parking strip, intended to be five feet, left by the city between its sidewalks on each the east and west of the tier of lots. The understanding was that the agreement should be binding when all the parties executed and delivered it. The plan, of course, called for the shifting of the lot lines two feet east of the correct lines, and hence required the conveyance of property from several, including two feet to the plaintiff by the owners of lot 9, and by the plaintiff to the defendants of the west two feet of lot 7.

One of the interested parties, other than those to this action, had his attorney prepare a proper instrument which was executed by all of the parties except the plaintiff. Upon having her attention called to the instrument, without leaving it with her, she, on account of advanced age and unfamiliarity with such instruments, referred the matter first to her son, who refused to act, and then to her own attorney. He was agreeable, provided satisfactory title was shown by abstract of the strip to be conveyed to the plaintiff. This was reported to the others by the attorney who had prepared the writing. They refused or failed to comply. The plaintiff never saw or signed the instrument, she never received any conveyance to a strip on the east adjoining her property, nor did she convey the strip on the west adjoining the property of the defendants. In

the meantime, without the consent of the plaintiff, the defendants continued to trespass on plaintiff's property and, among other things, by their servants, cut down valuable trees on her property. She then, within a reasonable time, brought this suit for judgment requiring the defendants to remove fence posts and that part of the concrete walkway that had been placed on her property, for injunction against further trespass, and for damages caused by cutting the trees. The case was tried without a jury, resulting in a judgment as prayed for, including damages in the sum of $75. The defendants have appealed.

Whatever may have been the views of the parties prior to the protest of the respondent and the survey made for her as to the correct line between the properties, it promptly thereupon became a matter of readjusting that line by treaty, if agreeable. The plan proposed to accomplish it was an acknowledgment that the survey contended for by the respondent was correct. That it was correct was admitted by the appellants at the trial of this case. It was not a case of a parol agreement to settle a disputed boundary line under which the parties fixed such line and gave possession accordingly, as argued by the appellants, but, on the contrary, it was a case in which, confessing the location of the true line, the parties sought to relocate it by a method that necessitated the conveyance of real property, which, under our statute, must be by deed. The respondent never gave possession of the strip occupied by the cement walkway. It was already in place at the time the appellants claim the respondent agreed to the plan for shifting the line, as is conclusively shown by the testimony of the attorney who prepared the quitclaim deed, who, when called as a witness for the appellant, said that, upon being employed to prepare the deed and before writing it, he went out to the

premises and talked with the respondent, with reference to which he testified:

"I went out with her then and we observed some—she called my attention to some stakes; I don't know whether put there by the regular surveyor, but some stakes on the ground, which would throw the line on the McLeod property, up close to a porch or side entrance and run across their sidewalk that ran into their house, and it made a difference of about two feet if we took this five feet, beginning the five feet from the sidewalk line, giving Mr. Allen what he had, 75 or 100 feet and McLeods their two lots. It would move that west boundary line, I think it is, of the Gamble property, a matter of two feet over from where she claimed it actually ought to be. That would give the McLeods their sidewalk."

Up to that time the respondent had protested, and consented to nothing other than the plan of conveyances. That plan was never completed. Respondent or her attorney did nothing to mislead the appellants. The appellants neglected the matter and either personally or otherwise did not inquire if the respondent had ever signed the deed. The property in controversy belonged to her at the time her suit was brought and at the time of the trial.

Nor do we find any justification for the claim of the appellants that the respondent is estopped by her conduct with reference to the setting of posts and building the fence along the outer side of the concrete walkway. While there is some testimony that she said at the time it was all right to build the fence, that testimony is conflicting and confused and, on the contrary, she positively denied it, and we think it is further denied by facts and circumstances in connection with the date and preparation of the proposed deed in its relation to the state of the improvements at that time being made by the appellants.

The amount of damages allowed by the trial court was well within, and justified by, the evidence.

Upon consideration of the whole of the record in the case, we think the judgment was right. Affirmed.

TOLMAN, C. J., FULLERTON, and HOLCOMB, JJ., concur.

MACKINTOSH, J. (dissenting)—This controversy can and should be settled in such way that each of the lot owners obtains a full sized lot and no one suffers any loss, and I cannot agree to the result sanctioning the stubborn insistence upon a technical and petty right.